## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

**ANGEL PERRONE, as personal**
**representative of the ESTATE OF**
**RITA THIBAULT and on behalf of**
**her survivors,**

      **Plaintiff,**                    **Case No.: 5:20-cv-00032-VMC-PRL**

**vs.**

**CENTURION OF FLORIDA, LLC;**
**DR. CARLOS GONZALEZ PAGAN,**
**individually; CRYSTAL REDMON, LPN,**
**individually;**

      **Defendants.**
_____

## JOINT UNOPPOSED THIRD MOTION FOR EXTENSION OF DEADLINES AND TRIAL CONTINUANCE

The parties, by and through undersigned counsel, pursuant to the Federal Rules of Civil Procedure and M.D. Fla. R. 3.08, hereby file this Motion for Extension of Deadlines in the above referenced lawsuit.

1. The undersigned is conscious of the Court's need to manage and progress its caseload and that this Court previously denied the Parties' motion for continuance. However, several events have occurred during discovery which were unforeseen to the undersigned and the Parties at the time the Parties agreed to the

original case management and scheduling order and at the time the Parties filed their motions for extension of said order.

2. Many of these complications have arisen as a result of the fact that discovery in this case has been ongoing during the COVID-19 pandemic. The pandemic has had a profound impact on the legal system (as discussed in the Parties' previous motions for continuance). However, equally important in this case is the strain that the COVID-19 pandemic has placed on the medical profession.

3. This is a deliberate indifference case arising from the death of Rita Thibault while incarcerated with the Florida Department of Corrections. Virtually all of the witnesses in this case are medical professionals whose schedules have been significantly impacted by the COVID-19 Pandemic.

4. The Parties have endeavored to coordinate discovery to account for their witnesses' schedules, including re-setting many scheduled deposition and conducting depositions of key witnesses via Zoom that normally the Parties would have insisted on taking in person.

5. However, despite their best efforts, the Parties have not been able to accommodate depositions of all the necessary medical witnesses in this case within the timeline set out in the Amended Case Management Order.

6. These developments have largely been out of the Parties' control. The Parties have been conducting discovery since prior to the entry of the original case

2

management order and have largely completed discovery outside of accommodating these witnesses with scheduling complications.

7.  Furthermore, as explained in further detail below, these complications were not foreseen to the Parties at the time they made their initial scheduling requests and filed their motion for extension of deadlines and trial continuance.

### A.  Relevant Events in the Case So Far

8.  The Complaint in this cause was filed on January 28, 2020 (Doc. 1). The Defendants filed their answer on March 3, 2020. (Doc. 6).

9.  On January 30, 2020, this Court entered a Related Case Order and Track Two Notice indicating that as soon as a responsive pleading was filed, the case would be set for a case management conference and ordered the parties to confer to produce a Case Management Report. (Doc. 4 at 1–2).

10.  As the Court is well aware, the COVID-19 virus first spreading across the globe became a pandemic in the intervening months, throwing the workplaces of many in the legal profession (including the undersigned's) into upheaval.

11.  On June 18, 2020, this Court entered an order noticing the case management conference for June 25, 2020.

12.  On June 25, 2020, the case management and scheduling conference was held. The Parties presented their Case Management Report to the Court. It should be noted that, at this time, the COVID 19 pandemic was still unfolding, the Parties (like

3

the rest of the world) did not know how long lockdowns would last or appreciate the full impact that the pandemic would have on witness availability going into late 2020 and early 2021.

13.     Despite the delays, the Parties were able to complete the majority of their fact discovery within the timeframe provided by the originally contemplated case-management order. The parties completed paper discovery (with the exception of one small outstanding set of requests served last month following mediation), conducted depositions of the principal parties over zoom, and completed mediation on this case.

14.     However, in addition to fact discovery this case requires substantial testimony from expert witnesses. In total, there are five expert witnesses currently retained who have provided medical opinions on a variety of matters from the standard of care for nurses and doctors to the cause of Ms. Thibault's death.

15.     The original Case Management Order left only a month between the disclosure of expert reports and the close of discovery.

16.     It quickly became apparent to the Parties that this was not enough time to arrange the substantial number of expert-related discovery that needed to be taken in this case.

17.     The undersigned, regrettably, is partly to blame for this due to a calendaring oversight leading to late disclosure of their expert witnesses. The

Plaintiffs retained three expert witnesses to provide testimony in their case and furnished their reports before filing suit (as required by Florida's medical malpractice laws for their state law claims). However, due to a calendaring oversight, they failed to update these disclosures in compliance with Rule 26. This resulted in a month delay in setting depositions for these witnesses.

18.     On March 30, 2021, in light of all of these circumstances, the Parties filed a Motion for Extension of time to Complete Discovery. (Doc. 24). The Parties requested dates in that motion based on representations made to them by the expert witnesses regarding their availability.

19.     On April 19, 2021, this Court entered its Amended Case Management and Scheduling Order. (Doc. 26).

20.     As such, the Parties proceeded to confirm the deposition dates they had contemplated before filing the motion.

**B.     Dr. Hegert's Trial Schedule Requires Rescheduling Her Deposition.**

21.     One of the key witnesses in this case is Plaintiffs' expert Dr. Julia Hegert. Dr. Hegert is a forensic pathologist who Plaintiffs hired to perform an autopsy on Ms. Thibault after her death.

22.     One of the issues in this case is the cause of Ms. Thibault's death. Some of the witnesses and records have identified myocarditis as her cause of death, as opposed to the untreated pneumonia alleged in the Complaint.

23.    Dr. Hegert is perhaps the only witness who can refute this claim as she actually opened Ms. Thibault's heart and found no evidence of myocarditis. She further found ample evidence of pneumonia inside Ms. Thibault's lungs.

24.    Originally, Dr. Hegert indicated she was available for a deposition in May 2021. However, when the Parties went to confirm those dates, she indicated she now would not be available until August.

25.    The reason for her change in availability is Dr. Hegert serves as a medical examiner for Orange County. With courts resuming trials in the Spring and Summer of 2021, she was called to testify in a backlog of criminal cases stretching into August.

26.    While Plaintiffs impressed upon her the need to get her deposition done before the end of discovery, she informed them that there was nothing she could do until August.

27.    This new information, which was not known to the Parties at the time of their first motion for continuance, prompted their second motion for continuance on June 18, 2021.

28.    On July 1, 2021, this Court entered its Order denying the motion for continuance, stating that the Parties had not shown good cause based on the unavailability of Dr. Hegert.

**C.    The Defendants' New Theory of Causation and Motion to Amend Their Answer and Affirmative Defenses.**

29.    In addition to the difficulties in scheduling expert depositions in this case, a new theory of defense has come to light that further complicates the case management deadlines.

30.    On July 1, 2021, the Defendants filed a motion with this Court to amend their affirmative defenses to place blame for Ms. Thibault's death on medical providers at Ocala Regional Medical Center—the hospital where she was transferred shortly before her death. (Doc. 30).

31.    This new theory was first alluded to in one of the Defendants' expert reports, but the Defendants did not notify the Plaintiffs of their intent to modify their affirmative defenses until shortly before the filing of this motion.

32.    Indeed, Defendants stated in their motion that they were not aware of the affirmative defense until expert disclosures and that they are still gathering facts to support this defense. (Doc. 30 at 3).

33.    Prior to Defendants' putting this new theory forward, Plaintiffs had no knowledge of this defense or any facts supporting it.

34.    Plaintiffs began investigating the defense upon receiving notice of their expert report and sent a notice to Ocala Regional Medical Center of their intent to sue. They are currently engaged in the pre-suit notice and discovery period as required by Florida law for medical malpractice claims.

35.     Plaintiffs are concerned that the addition of this defense will create an empty chair if these medical defendants are not named as parties. Furthermore, given that Defendants are still collecting facts to support this defense and did not move to amend their affirmative defenses until shortly before the discovery deadline, Plaintiffs have not had sufficient time to conduct discovery on the issues relating to these potential new defendants.

36.     It is further Plaintiffs' position that if these *Fabre* defendants are added to provide greater specificity to the pled affirmative defenses, Plaintiffs should have an opportunity to bring the *Fabre* defendants into this case as formal defendants.

### E.     The Parties' New Proposed Case Management Deadlines

37.     In the best of circumstances, a civil rights suit involving a death of an inmate where the standard of care and cause of death are contested is a complicated matter that sometimes requires extension of case management deadlines as the issues crystalize and become clear in discovery.

38.     Unfortunately, the Parties have not been faced with the best of circumstances here. This case has faced delays caused by COVID-19 and all the associated upheaval the pandemic has caused, witnesses whose schedules are booked solid months in advance, uncooperative witnesses, and new theories of liability revealed late in the case.

39.     Despite these obstacles, the Parties have diligently tried to work through these obstacles together and have readjusted their schedules on multiple occasions to accommodate the unique scheduling challenges this case has posed.

40.     The Parties have agreed to and scheduled all necessary expert depositions in this case and agreed to take those depositions, if necessary, outside the case management deadlines to ensure these issues receive a full and fair airing.

41.     The Parties are further cognizant that the Court is similarly faced with challenges due to the COVID-19 pandemic, and do not make these subsequent requests for continuances lightly.

42. All of this being said, further continuances are necessary here due to multiple events that have been outside the Parties' control that will prejudice both parties if not granted.

43.     As such, the Parties propose a new case management and trial schedule as follows:

| Event | Court Ordered Deadlines | Requested Deadlines |
|---|---|---|
| Discovery Deadline | July 9, 2021 | August 31, 2021 |
| Current Defendants' Dispositive and *Daubert* Motions (Responses due 21 days after service) | August 9, 2021 | September 17, 2021 |
| Deadline to Move to add Ocala Regional Medical Defendants (accounting for the six month notice period provided by Florida Law). | N/A. | October 1, 2021 |

44.    The undersigned further requests to file a new case management report or schedule a new case management conference if the Ocala Regional Medical Defendants are added to this case to determine the remaining case management deadlines.

45. While these proposed deadlines substantially extend the current case management deadlines, the Parties do so to avoid the risk of further scheduling delays.

46.    Furthermore, adding these new defendants to the current suit will ultimately conserve judicial resources. Otherwise, they will need to be sued in a separate action that may result and duplicative litigation and pose a substantial danger of juries arriving at inconsistent verdicts.

47.    The undersigned certify, pursuant to M.D. Fla. Rule 3.08(b), that their clients consent to the continuance.

48.    The Centurion Defendants join in this motion and agree that factors beyond the parties' control have necessitated this renewed request for relief from the Court.  The Centurion Defendants anticipate that they would oppose any motion to add parties.

WHEREFORE, the parties hereby move this Honorable Court for an extension of the above deadlines as stated herein.

## MEMORANDUM OF LAW

Federal Rule of Civil Procedure 16(b)(4) states "a schedule may be modified only for good cause and with the judge's consent." As such, the decision of whether to grant or deny a continuance rests in the discretion of the trial court. *Id.* However, The Eleventh Circuit has adopted a four-factor test to evaluate the exercise of discretion in granting or denying a trial continuance: (1) the diligence of the party requesting the continuance to ready the case prior to the date set for a hearing; (2) the likeliness that the need for continuance could have been met if a continuance was granted; (3) the extent to which granting the continuance would have been an inconvenience to the court and the opposing party, including its witnesses; and (4) the extent to which the party seeking the continuance might have suffered harm as a result of the denial. *Fowler v. Jones*, 899 F.2d 1088, 1093–1094 (11th Cir. 1990); *See also Baker v. Coto*, 154 Fed. Appx. 854 (11th Cir. 2005) (applying the same standard in the context of a civil rights case.)

Respectfully, all but one of these factors strongly favors a continuance under the circumstances present here. Turning to the first factor, the Parties have diligently worked to ready the case for summary judgment and trial. They had completed the vast majority of  fact discovery within the deadlines set by the original Case Management and Scheduling Order. The grounds for continuance here are prompted

11

by factors outside of their control relating to the pandemics' effect on their expert witnesses' availability.

Other courts have found that COVID-19's impact on witness availability sufficient grounds for continuance, even when such requests are opposed. *See Matute v. BP Exploration and Production, Inc.*, 19-cv-595; 2020 WL 4529838 (E.D. La. June 23, 2020) (granting opposed motion for continuance of trial deadlines over the objection of defendant where Plaintiffs' toxicologist expert could not produce an expert report on time due to complications arising from COVID-19); *Elsherif v. Clinic*, 18-cv-29998, 2020 WL 1441959 (March 24, 2020) (granting opposed motion to take depositions outside the discovery deadline to accommodate assisting high risk family members during the pandemic).

Here, the requested continuance is unopposed and comes at the cooperation of the Parties to accommodate these scheduling conflicts. Further, the continuance is requested to accommodate the availability of practicing medical providers whose own schedules have been taxed as a result of the pandemic. As such, the requested continuance is not a result of a lack of diligence among the parties. The first factor strongly favors granting a continuance.

Turning to the second factor, granting a continuance will resolve the need for the continuance. Here, the need for a continuance arises from delays arising from expert witness testimony and the introduction of new defenses late in discovery. The

depositions of all expert witnesses have been scheduled (and enforced via subpoena where necessary). As such, this factor too strongly favors granting a continuance.

The third factor concerns the extent to which granting a continuance would be an inconvenience to the court and opposing party. *Fowler*, 899 F.2d at 1093. The Parties are cognizant that disruption of case management deadlines works a hardship on the Court. However, under the circumstances presented, that hardship must be weighed against the need for a continuance.

It should be noted that in Florida and throughout the country, the delays caused by COVID 19 have been found to be serious enough to impact the constitutional speedy trial rights of criminal defendants, even into the Spring and Summer of 2021. *See United States of America v. Macken*, 2:20-cr-23; 2021 WL 2711250 (E.D. Cal. July 1, 2021) (denying motion to dismiss indictment under Speedy Trial Act's "ends of justice" exclusion due to delays arising from COVID 19); *United States v. Burks*, 2:19-cr-344, 2021 WL 354107 (M.D. Ala. Feb. 2, 2021) (citing ongoing concerns regarding the risk of COVID 19 as grounds for finding that the ends of justice served by a continuance outweighs the interest of the public and a criminal defendant in a speedy trial).

Indeed, in Florida, speedy trial provisions have remained suspended and tilled through October 4, 2021, for many criminal defendants due to the disruptions resulting from COVID-19. See *In re: COVID-19 Health and Safety Protocols and*

*Emergency Operational Measures for Florida Appellate and Trial Courts*, Fla. Admin. Order No. AOSC21-17 at 26-27 (Fla. June 04, 2021). These disruptions in the criminal justice system show that the impacts COVID-19 on courts is widespread and resulted in delays even at the expense of criminal defendants' constitutional rights. These delays, in part, have contributed to the present need for continuance due to Dr. Hegert's testimony in criminal cases limiting her availability.

Furthermore, the requested continuance will still allow the majority of this case to be completed within a timely fashion. At the time this case was filed, the Local Rules stated, "it is the goal of the court that a trial will be conducted in all Track Two Cases within two years after the filing of the complaint, and that most such cases will be tried within one year after filing the complaint." M.D. Fla. Local Rule 3.05(c)(2)(E). These goals were set prior to the COVID-19 pandemic and without taking delays relating to COVID-19 into account. This is a complex case involving substantial damages, multiple disputes regarding liability, and substantial expert testimony, which—even under the best of circumstances would have required a large amount of discovery for a Track Two case.

The Complaint was filed in January 2020. The Parties can accomplish all pretrial deadlines before January 2022 for the claims contained in the original Complaint. The Parties hoped to resolve this case, including the trial, within the Local Rules' goal, but COVID-19 delays—including the three month delay in the

14

initial case management conference—as well as the newly-discovered third-party defendants, have made strict adherence to the goal impossible. That being said, a substantial portion of this case will be completed within the goal for Track 2 cases–even accounting for COVID-19 related delays.

Finally, this factor is tempered by the fact that it considers not only inconvenience to the court but opposing parties. Here, the continuance is sought by all Parties. As such, to the extent the inconvenience to the court disfavors a continuance, the desire for all parties to continue the case must be considered as well in evaluating this factor.

Turning to the fourth factor, substantial prejudice to the Parties will result if a continuance is not granted. This case hinges on expert testimony. If these issues are not given a full airing in discovery, neither party will be adequately able to present their case at summary judgment or trial. Certainly, the Parties could seize on these scheduling issues to their advantage—using the failure to schedule expert witnesses as grounds to strike them or force the Parties to brief their summary judgment motions without the benefit of depositions. However, after conferring on these matters, the Parties determined the most just course of action was to seek more time rather than leverage this pressure-cooker situation to their respective side's advantage through litigation.

Despite all of the hardships in this case, counsel for the Parties have been able finish most of discovery and resolve any disputes relating to discovery with little acrimony or motion practice. However, these delays and events outside of the Parties' control requires more time to be dedicated to finish that process. As such, the Parties submit these exigent circumstances to  the Court and submit the above continuance is the most efficient and just way to address those exigent circumstances

Respectfully submitted,

_____*/s/ Jesse B. Wilkison*_____

Wm. J. Sheppard, Esquire
Florida Bar No.:  109154
Elizabeth L. White, Esquire
Florida Bar No.:  314560
Matthew R. Kachergus, Esquire
Florida Bar No.:  503282
Bryan E. DeMaggio, Esquire
Florida Bar No.:  055712
Jesse B. Wilkison, Esquire
Florida Bar No.: 118505
Camille E. Sheppard, Esquire
Florida Bar No.: 124518
Sheppard, White, Kachergus, DeMaggio & Wilkison, P.A.
215 Washington Street
Jacksonville, Florida 32202
Telephone:   (904) 356-9661
Facsimile:    (904) 356-9667
Email: sheplaw@sheppardwhite.com
COUNSEL FOR PLAINTIFF

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on the 15th of July, 2021 a copy of the

foregoing has been furnished to the following:

> **Brian A. Wahl, Esquire**
> **Bradley, Arant, Boult & Cummings, LLP**
> **One Federal Place**
> **1819 5th Ave N**
> **PO Box 830709**
> **Birmingham, AL 35203-2120**

_/s/ Jesse B. Wilkison_
ATTORNEY

JBW/km[Thibault.3rd.unopposed.mofet]